UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILLENIUM TGA, INC., | No. 12-CV-0792-MMA (WVG) |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S RENEWED *EX PARTE* APPLICATION FOR LEAVE TO TAKE EXPEDITED DISCOVERY** |
| v. | |
| TYREE PASCHALL, | |
| Defendant. | [DOC. NO. 6] |

Pending before the Court is Plaintiff's Renewed *Ex Parte* Application for Leave to Take Expedited Discovery. (Doc. No. 6.) For the reasons stated below, Plaintiff's *Ex Parte* Application is DENIED.

**I. BACKGROUND**

This case was filed on April 2, 2012. (Doc. No. 1.) On May 4, 2012, Plaintiff submitted an *Ex Parte* Application to this Court, requesting leave to serve immediate discovery on third party Internet Service Providers ("ISPs") to obtain information about third party internet subscribers. (Doc. No. 3.) Attached as Exhibit A to the Plaintiff's Complaint was a list of nearly one thousand Internet Protocol ("IP") addresses corresponding to the dates and times of the copyright infringement alleged in Plaintiff's Complaint. (Doc. No. 1; Exh. A.)

Plaintiff's Application requested leave to take expedited discovery in order to serve subpoenas upon the ISPs identified in Exhibit A. (Doc. No. 3 at 4.) Plaintiff asserted that the subpoenas would allow it to obtain basic contact information for all of the internet subscribers listed

1 in Exhibit A. (Doc. No. 1; Exh. A; Doc. No. 3 at 5-6.) Plaintiff claimed that expedited discovery was
2 necessary because, without the names and contact information associated with each IP address
3 allegedly involved in the BitTorrent swarm,[1] Plaintiff would be unable to establish damages. (Doc.
4 No. 3 at 9.)

5   On May 21, 2012, this Court denied Plaintiff's *Ex Parte* Application on the grounds that
6 Plaintiff had failed to adequately explain, or even attempt to explain, its reasoning for needing the
7 identities and contact information of the nearly one thousand IP addresses listed in Exhibit A of the
8 Complaint. (Doc. No. 5 at 3.) The Court was at a loss to understand why the identifying information
9 was needed to assess damages when Exhibit A lists the IP addresses of the nearly one thousand
10 alleged infringers, along with the dates and times that the alleged infringing activity occurred. Id.
11 The Court found that the list of all of the IP addresses, complete with dates and times of each alleged
12 copyright infringement activity, should be sufficient to calculate such damages. Id. Plaintiff failed
13 to convince the Court that it also needed every name, address, telephone number, and email address
14 associated with each IP address. Id.

15   On June 20, 2012, Plaintiff filed the instant Renewed *Ex Parte* Application for Leave to
16 Take Expedited Discovery. (Doc. No. 6.) Plaintiff now claims that identifying information of the
17 alleged joint tortfeasors is necessary because Exhibit A does not capture the full extent of the alleged
18 infringing activity, multiple IP addresses can be associated with a single individual, and in order to
19 prove contributory infringement, one must prove an underlying direct infringement. Id. at 1.
20 Curiously, Plaintiff now asserts that Exhibit A does not in fact represent the full extent of the alleged
21 infringing activity, but instead "only lists the United States-based peers that Plaintiff's agents
22 observed participating" in the BitTorrent swarm at issue. Id. at 2. At the same time, Plaintiff also
23 claims that Exhibit A may actually overstate the extent of the alleged infringing activity. Id. at 3.
24 Finally, Plaintiff claims that the purpose of seeking the identities is "to establish contributory liability
25 against [Defendant] and any later-joined parties." Id. at 4.

---

[1]   BitTorrent is a modern file sharing method used for distributing data via the Internet. (Doc. No. 1 at 3.) Plaintiff's Complaint alleges that its creative work, "Shemale Yum - Jenna Comes A'Knocking!" was illegally shared by thousands of IP addresses participating in a BitTorrent swarm. Id. at 2. Exhibit A lists the IP addresses of all alleged participants in the BtTorrent swarm at issue in Plaintiff's Complaint.

## II. LEGAL STANDARD

Generally, a party may not initiate discovery before the parties have satisfied the meet and confer requirement of Federal Rule of Civil Procedure 26(f). However, a court may authorize earlier discovery "for the convenience of parties and witnesses and in the interests of justice." Fed. R. Civ. P. 26(d). A court may grant a request to take discovery prior to the parties' meeting under Rule 26(f) where the requesting party demonstrates good cause. See Semitool, Inc. V. Tokyo Electon Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002); U.S. v. Distribuidora Batiz CGH, S.A. DE C.V., 2009 WL 2487971, at 10 (S.D. Cal. 2009). A balancing test is used to determine the presence of good cause. See Semitool, 208 F.R.D. at 267-268. "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Id. at 276.

## III. RULING

The Court finds Plaintiff's arguments to be unconvincing, and is concerned with the inconsistencies set forth regarding the information that Plaintiff has already gathered and its reasons for requesting expedited discovery. (See Doc. Nos. 1, 6.) Further, Plaintiff fails to clearly address whether the Court has jurisdiction over the ISPs and their corresponding internet subscribers.

### A. The Order That Plaintiff Relies On In His Original Application Has Recently Been Vacated

Plaintiff asserts in its original *Ex Parte* Application that the "identities of [Defendant's] joint tortfeasors are essential to Plaintiff's full prosecution of its claims...[w]ithout determining these identities, Plaintiff will have no means of computing the damages that can be attributed to [Defendant's] infringing activities." (Doc. No. 3 at 4.) To support this proposition, Plaintiff cited an order in Pacific Century Int'l, LTD. v. John Doe, No. 11-3479 (E.D. Cal. Jan. 19, 2012), ECF No. 9. Id. However, on reconsideration and after it was cited by Plaintiff, the court in Pacific Century vacated the order, stating:

> [O]n review, the court finds that reconsideration is warranted on the ground that the co-conspirator discovery is unnecessary to identify the named John Doe defendant...plaintiff's concerns that without knowing the identities of John Doe and his co-conspirators, "[p]laintiff will have no means to name and serve anyone with process" and "will have no means of computing the damages that can be attributed to the conspiracy or establishing testimony from co-conspirators to aid in proving

> liability against John Doe and any co-conspirators who are later joined to this action" are unconvincing...[t]hus, because plaintiff does not need expedited discovery as to the alleged co-conspirators in order to proceed with this case, that "need" does not outweigh the prejudice to the ISPs, which would necessarily incur some burden (albeit minimal) in responding to the subpoenas.

Pacific Century Int'l, Ltd. v. Doe, 2012 WL 2522146 (E.D. Cal. June 28, 2012).

The Pacific Century court also ordered all of the subpoenas to non-party co-conspirators quashed, and stated, "[i]nsofar as any personal identifying information of the non-party co-conspirators has already been provided to plaintiff from the ISPs, plaintiff is prohibited from communicating with these subscribers." Pac. Century Int'l, Ltd, 2012 WL 2522146 at 4. Other courts have taken a similar tact, reasoning that if the "witnesses" are not named as co-defendants, then there is not necessarily a need for expedited discovery as the burden on the ISPs, although minimal, is greater than the potential benefit to Plaintiff. See Hard Drive Productions, Inc. v. Does 1 - 30, 2011 WL 5573960, at 3 (N.D. Cal. Nov. 16, 2011); see also Malibu Media, LLC v. John Does 1 through 7, 2012 WL 2872842, at 4 (E.D. Cal. July 11, 2012).

**B. Plaintiff's Reasoning As To Why Expedited Discovery Is Necessary Seems Disingenuous**

Plaintiff claims that the reason it needs to subpoena so many witnesses is that there may be IP addresses of additional, undetected, infringers located in the BitTorrent log files on their computers. (Doc. No. 6 at 2.) However, Plaintiff has failed to explain why it is unable to obtain the same information by analyzing Defendant's computer files during the course of normal discovery.

Furthermore, in its Complaint, Plaintiff asserts through the Declaration of Peter Hansmeier that the IP addresses in Exhibit A were identified using "sophisticated and proprietary peer-to-peer network forensic software to perform exhaustive real time monitoring of the BitTorrent-based swarm...[the] processes are designed to ensure that information gathered about all individual IP addresses in the swarm is accurate." (Doc. No. 3-1; Hansmeier Decl ¶ 6.) After locating the swarm, the forensic computer company hired by Plaintiff conducted an "exhaustive real time 'fingerprint' of individuals in the swarm." Id. at 7. Plaintiff's forensic computer expert asserts that "[it] was able to observe the infringing activities of [Defendant's] joint tortfeasors who were present in the same swarm (listed on Exhibit A of the Complaint) through this forensic software." Id. at 8. There is no mention of other users that may not have been captured by the forensic software. (See Doc. No. 3-1.)

Based on these assertions, the Court finds Plaintiff's assertion that it needs to recover additional files to determine the size and scope of the swarm to be disingenuous. According to Hansmeier's Declaration, Plaintiff has already determined the size and scope of the swarm at the time of the only alleged infringement. " (Doc. No. 3-1; Hansmeier Decl. ¶ 9.) Plaintiff's assertion in its Renewed Application that there may have been international IP addresses that may only be identifiable from BitTorrent logs on the individual computers of the unidentified ISP users, does not appear to correspond with the information provided in the Hansmeier Declaration. (Doc. No. 6 at 2.)

### C. Plaintiff Appears To Treat The "Joint-Tortfeasors" As Doe Defendants And The Court May Lack Jurisdiction Over Many Of The ISPs And IP Addresses

Plaintiff repeatedly refers to the IP subscribers listed in Exhibit A as "joint tortfeasors," but essentially focuses on them as potential co-defendants, and asserts that these individuals may later be added to the action. (Doc. No. 6 at 5.) Plaintiff's Renewed Application states, "Plaintiff cannot join any of [Defendant's] alleged joint tortfeasors to this action without first knowing who they are," and goes on to state that the identities of the tortfeasors will "increase the number of individuals from whom to collect damages." Id. Thus, the Court finds that these witnesses are essentially being treated as Doe defendants, and should be subject to the standards in this district when determining whether to grant requests for expedited discovery.

Other Judges in this district, including this Judge, have found that Doe defendants must be identified by the plaintiffs with sufficient specificity by providing both the unique IP addresses, and the alleged physical point of origin assigned to each IP address, on the day of the purported infringement. See Malibu Media, LLC v. John Does 1 through 5, No. 12-CV-1354-LAB-WVG, ECF No. 5, at 4 (S.D. Cal. July 9, 2012) (opinion by Judge Gallo); Malibu Media, LLC v. John Does 1 through 27, No. 12-CV-1356-CAB-WVG, ECF No. 5, at 4 (S.D. Cal. July 10, 2012) (opinion by Judge Gallo); 808 Holdings, LLC v. Collective of Dec. 29, 2011 Sharing Hash, No. 12-CV-0186-MMA-RBB, ECF No. 7, at 8 (S.D. Cal. May 4, 2012) (opinion by Judge Brooks); Malibu Media, LLC v. John Does 1-12, No. 12-CV-1059-MMA-BGS, ECF No. 8, at 4 (S.D. Cal. June 12, 2012) (opinion by Judge Skomal). These courts have determined that the requested expedited discovery may be granted if the alleged physical point of origin is within this Court's judicial district, however, if it is

1  outside the Court's judicial district, the complaint may be dismissed for lack of jurisdiction and
2  therefore expedited discovery will not be granted for that individual IP address. <u>808 Holdings, LLC</u>,
3  No. 12-CV-0186-MMA-RBB, ECF No. 7, at 10-13; <u>Malibu Media, LLC</u>, No. 12-CV-1059-MMA-
4  BGS, ECF No. 8, at 6.

5        The plaintiff bears the burden of establishing jurisdictional facts. <u>See Columbia Ins. Co.
6  v. Seescandy.com</u>, 185 F.R.D. 573, 578 (N.D. Cal. 1999). From the information provided by Plaintiff,
7  it is unclear whether the Court would be able to assert jurisdiction over many of the ISPs or
8  subscribers. Many of the ISPs listed in Exhibit A appear to be located outside of this judicial district.
9  For example, Exhibit A lists ISPs such as, "Hawaiian Telecom Services," "Buckeye Cablevision,"
10 and "North Arkansas Telephone Co.," among others. (Doc. No. 1; Exh. A.) Plaintiff has failed to
11 provide any geolocation data regarding the location of any of the internet subscribers.

## IV. CONCLUSION

13       The Court finds that Plaintiff has not demonstrated good cause to warrant the renewed
14 expedited discovery requested. Therefore, Plaintiff's Renewed *Ex Parte* Application for Leave to
15 Take Expedited Discovery is DENIED.

16 IT IS SO ORDERED.

17 DATED: August 13, 2012

                                                    Hon. William V. Gallo
                                                    U.S. Magistrate Judge